## Case No. 9,784.

### MORA v. FOSTER et al.

[3 Sawy. 469.] [1]

Circuit Court, D. California. Sept. 22, 1875.[2]

MEXICAN LAND GRANTS—GRANT TO CHURCH—DEPARTMENTAL ASSEMBLY—SALE—SUBSEQUENT GRANT—DAMAGES.

1. A claim to land made by the Catholic bishop, of Monterey, by virtue of a Mexican grant to the church for religious purposes, is "of a right or title derived from the Spanish or Mexican governments," and is, by the terms of the act of congress one, the validity of which, the board of land commissioners was authorized to consider and determine.

2. The board of land commissioners having adjudged the claim to be valid, and its decree not having been subsequently set aside or impeached by any direct proceeding for the purpose, it cannot be collaterally questioned in an action to recover the land based upon such confirmed title.

3. The departmental assembly of California under the Mexican government, had no power to authorize the sale of any lands other than those of the department. It could not confer upon the government any power over the domain of the nation, its authority upon that subject being limited by the colonization laws to the approval or disapproval of grants made by the governor under those laws.

4. Where a grant made to the church for religious purposes in 1796, was finally confirmed by the board of land commissioners to the Roman Catholic bishop of Monterey, and another grant to another party embracing the same land by governor Pio Pico, in 1845, upon a sale made by direction of the departmental assembly, was also finally confirmed: Held, that the latter grant affords no defense to an action to recover possession of the land founded upon the former.

5. Where there is no evidence of the possession of the defendants at any time anterior to the date of the commencement of the suit to recover possession of land, only nominal damages can be allowed.

[6. Cited in Mora v. Munez, 10 Fed. 640, to the point that the patent issued upon a confirmed Mexican grant is the final, authentic, and conclusive record, which establishes the legal title in the patentee, which must prevail in an action at law against any party having no patent to the land, that it is conclusive and unassailable collaterally by any party having no patent.]

[This was an action of ejectment by Francis Mora against John Foster and others.]

Doyle & Barber, for plaintiff.

John B. Felton and E. L. Goold, for defendants.

Before FIELD, Circuit Justice, and SAWYER, Circuit Judge.

FIELD, Circuit Justice. The questions involved in this case have been substantially determined by the supreme court in the cases of U. S. v. Workman [1 Wall. (68 U. S.) 745], and Beard v. Federy [3 Wall. (70 U. S.) 478], as will be seen by their examination. The present action is ejectment for the possession of certain church lands of the Mission of San Juan Capistrano in the county of Los Angeles,

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

2 [Affirmed in 98 U. S. 425.]

consisting of the church, churchyard, cemetery, garden, orchard and vineyard with the necessary buildings and appurtenances, the whole comprised within an area of forty-four acres and four-tenths of an acre. The plaintiff traces his title through Joseph S. Alemany, formerly Catholic bishop, of Monterey, to whom a patent of the premises was issued by the United States on the eighteenth of March, 1865. The record of the proceedings before the board of land commissioners, which resulted in a decree confirming the claim, upon which the patent was issued, was introduced in evidence; and in the petition of the bishop it was averred, in substance, that at the time of the conquest and cession of California to the United States, the canon law of the Roman Catholic Church was recognized, and in force, as the law of Mexico, as it had been in Spain, when Mexico was a dependency thereof, in all things relating to the acquisition, transmission and disposal of property real or personal belonging to the church, or devoted to religious uses; that by the laws of Spain and Mexico thus in force in California, the title, control and administration of all ecclesiastical or church property were vested in the hands of the bishop and clergy of the diocese, who for such purposes were regarded as a body corporate; that at the date of the conquest and cession of California the Catholic Church had been in the actual and undisturbed possession of the premises in controversy since the year 1796; and that for the purpose of enabling the petitioner to hold the church property and administer the temporalities of the church and manage its estate and property, he had been incorporated as a sole corporation by legislation of the state of California, under the name and title of Bishop of Monterey. The claim thus asserted by the Catholic Church, through its bishop, to the lands in controversy, is "of a right or title derived from the Spanish or Mexican governments," and is thus by the very terms of the act of congress, one the validity of which the board of land commissioners was authorized to consider and determine. Having considered it and having adjudged it to be valid, its validity not having been in any direct proceeding subsequently impeached, cannot now be questioned in the present action.

The defendants assert title under a grant of land made by Governor Pio Pico in 1845, upon a sale directed by order of the departmental assembly, which grant was confirmed under the act of congress of March 3, 1851 [9 Stat. 631]. It is admitted for the purposes of this action that the confirmation has been followed by a survey approved by the surveyor-general of the United States. But this grant and confirmation cannot aid the possession of the defendants as against the patent under which the plaintiff claims. The departmental assembly possessed no power to authorize a sale of any lands other than those of the department. Its powers

were very carefully considered by the supreme court in the case of U. S. v. Workman [supra], and it was there held that that body could not confer upon the governor any power over the domain of the nation, and that its own power in the alienation of public property of that character was limited, by the colonization laws of Mexico, to the approval or disapproval of grants made by the governor under those laws.

The counsel of the defendants feeling the force of the adjudication in that case, contends that the title to the church lands was never vested in the bishop, or in the Catholic Church, but remained in the Mexican nation at the time of the conquest and cession of the country; and that the patent to the bishop is not therefore evidence of any title anterior to its date, and can only be treated as a conveyance of the interest which the United States then possessed; and that the defendants' confirmation and approved survey, taking effect by relation as of the date of their petition to the land commission, carries an earlier title.

The obvious answer to this position is, that the adjudication of the supreme court that the departmental assembly had no authority to authorize the governor to sell any portion of the public domain, nullifies the effect of the confirmation. That confirmation does not of itself translate the title of the United States. As declaring the validity of an existing title it might operate to protect the estate of the confirmee. But the validity of that title having been assailed by the supreme court and overthrown, the confirmation can afford no aid to the defendants in their contest with the title of the plaintiff.

The patent is also something more than a mere conveyance of the government; it is evidence having the force and operation of a record that the title claimed was valid, or at least entitled to recognition and confirmation, at the time the sovereignty of Mexico over the country was superseded by the sovereign authority of the United States. It is evidence to that extent which is not open to dispute in an action of ejectment, except where the assailant comes into court possessed of a similar record or one of equal dignity. The defendants stand in no such position; they have no such record; their confirmation and survey being of a claim, belonging to a class adjudged invalid by the highest tribunal of the nation, furnishes no vantage ground to them in an attack upon an established and patented title, beyond that held by mere trespassers.

The plaintiff is therefore entitled to the premises. It is admitted that the defendants were in possession at the commencement of the action, but there is no evidence of their possession at any previous period. There is therefore no foundation laid for the recovery of any other than nominal damages, and none will therefore be awarded.

The plaintiff must have judgment for the

possession of the premises with one dollar damages, and it is so ordered.

[Upon a writ of error, the judgment of this court was affirmed. 98 U. S. 425.]